IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Johnnie Mae Wright, ) | Civil Action No. 5:13-2100-MGL-KDW |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | REPORT AND RECOMMENDATION |
| ) | OF MAGISTRATE JUDGE |
| Carolyn W. Colvin, Acting Commissioner ) | |
| of Social Security Administration, ) | |
| ) | |
| Defendant. ) | |
| ) | |

This appeal from a denial of social security benefits is before the court for a Report and Recommendation ("Report") pursuant to Local Civil Rule 73.02(B)(2)(a) (D.S.C.). Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) and 5 U.S.C. § 706 to obtain judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") pursuant to the Social Security Act ("the Act").

I.     Relevant Background

   A.     Procedural History

Plaintiff applied for disability benefits under the Act on August 27, 2009.[1] Tr. 129-37. Plaintiff's claims were denied initially on June 1, 2010, Tr. 43-44, and on reconsideration on September 28, 2010, Tr. 48-49. Plaintiff requested a hearing before an administrative law judge ("ALJ"), Tr. 69-73, and a hearing was held on February 23, 2012, Tr. 25-42. In a decision dated March 5, 2012, the ALJ determined that Plaintiff was not disabled within the meaning of the Act. Tr. 12-20. Plaintiff requested that the Appeals Council review the decision, Tr. 7, and on May

---

[1] The record also contains applications for SSI and DIB dated February 18, 2010. Tr. 138-50.

31, 2013, the Appeals Council denied Plaintiff's request for review, Tr. 1-5, thereby rendering the March 5, 2012 decision of the ALJ the Commissioner's final decision for purposes of judicial review. Plaintiff brought this action seeking judicial review of the Commissioner's decision in a Complaint filed on August 2, 2013. ECF No. 1.

  B. Plaintiff's Background

  Plaintiff was born in August 1948, and was 59 years old on September 30, 2007, the date of her alleged disability onset, and 63 years old on March 5, 2012, the date of the ALJ's decision before this court. Tr. 164. Plaintiff completed the fourth grade and did not return to school to further her education or obtain a General Educational Development ("GED") certificate, but she is able to read and write. Tr. 31. Plaintiff seeks DIB and SSI because of pain and other symptoms in her left leg. Tr. 170.

  In a March 25, 2010 Report of Contact, Plaintiff reported she had problems with her left leg for a number of years and had osteoarthritis of the knees but had never been seen by an orthopedist. Tr. 168. Plaintiff had not had surgery on her knees. Plaintiff stated that she can "walk for a while, then her leg and her knee will start to bother her." *Id.* She reported that it took her 30 minutes to walk to the grocery store down the street, and "going she is OK, but coming back is of issue." *Id.* Plaintiff reported that she lived with her daughter and grandson, and was usually at home alone during the day. She reported that she was able to take care of herself and do chores around the house. Plaintiff reported that the only work she had ever done was hotel housekeeping. *Id.* As a hotel housekeeper she stood and walked the entire shift with no sitting; she lifted mops, towels, and linens; but she did not have to climb, crawl, or kneel. Plaintiff reported the heaviest items lifted were wet towels that could weigh up to 25 pounds. *Id.*

C.   The Administrative Proceedings

1.   Plaintiff's Hearing Testimony

At the time of the February 23, 2012 hearing, Plaintiff was 63 years old and testified that her past work consisted primarily of hotel/motel housekeeping. Tr. 31. Her earnings record showed substantial gainful activity for the years 1997 through 2001; her earnings dropped in 2002. *Id.* Plaintiff stated that in 2002 she might have been working part time and "it could have been one of those times that [she] stayed out like a month or so for [her] leg because [she had] done that a couple of times." Tr. 32. Other than one week in 2008, Plaintiff had not worked since September 2007. *Id.* Plaintiff testified that she was unable to work because after working 30 minutes or almost an hour her leg would start "drawing" and she would be unable to keep up with the other workers. *Id.* Plaintiff described "drawing" as her knees would "start buckling" and she could not walk the halls. Tr. 33. Plaintiff stated the problem was with her left knee, but because she was putting so much pressure on her right knee, it was also starting to bother her. *Id.* Plaintiff also stated that now both hips are "drawing" on her. Tr. 34. When questioned by the ALJ regarding the lack of medical treatment notes, Plaintiff explained that she did not have health insurance or income to go to the doctor. *Id.* Plaintiff testified that "a while back" she was diagnosed with sciatica and prescribed Vioxx and Percocet, but when she could no longer afford to go to the doctor she used over-the-counter pain medication including Icy Hot cream, Tylenol, and ibuprofen, and she also wore knee wraps. Tr. 34. Plaintiff testified that if she "sit[s] for a period of time sometimes, [her] knee will swell" and there have been times when she had to go to the emergency room to have fluid drawn from it. Tr. 35. Plaintiff testified that she can walk or stand for 20-to-30 minutes before experiencing pain. Tr. 36-37. She stated that if she is on her feet for a long period of time her knee starts to weaken and she has to sit down and rest a "little

3

bit" before she can get back up and try again. Tr. 37. Plaintiff stated she would need to rest for at least an hour after being on her feet for a while. Tr. 38.

    2.  Vocational Expert ("VE") Testimony

VE Ezra Brown testified at Plaintiff's administrative hearing. He described Plaintiff's prior work as a hotel/motel housekeeper, indicated in the Dictionary of Occupational Titles ("DOT") 323.689-014, as unskilled, with a specific vocational preparation ("SVP") of 2, and light. Tr. 40. The ALJ posed the hypothetical of an individual of Plaintiff's age, education, past work, limited to medium residual functional capacity ("RFC") who "can only frequently use foot controls on the left lower extremity; can occasionally climb, kneel, crouch, and crawl." *Id.* The ALJ asked if such a person could perform Plaintiff's past job and the VE responded in the affirmative. *Id.* The ALJ altered the hypothetical to limit the individual to light RFC, "frequently use the left lower extremity for foot controls; can never climb ladders, ropes, or scaffolds; but can occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl." *Id.* The VE testified that such a person could perform Plaintiff's past job. *Id.* Plaintiff's counsel amended the hypothetical to limit the individual "to being on his or her feet for no more than 30 minutes to 45 minutes without having to stop and rest for another 20 or 30 minutes" and asked if such a person could "return to the job as a hotel maid." Tr. 41. The VE responded in the negative. *Id.*

II. Discussion

  A. The ALJ's Findings

In her March 5, 2012, decision, the ALJ made the following findings of fact and conclusions of law:

  1.  The claimant meets the insured status requirements of the Social Security Act through December 31, 2012.

    2.    The claimant has not engaged in substantial gainful activity since September 30, 2007, the alleged onset date (20 CFR 404.1571 *et seq.,* and 416.971 *et seq.*).

    3.    The claimant has the following severe impairment: degenerative joint disease of the left knee (20 CFR 404.1520(c) and 416.920(c)).

    4.    The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

    5.    After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform less than the full range of light work as defined in 20 CFR 404.1567(b) and 416.967(b). Light exertional work requires lifting and carrying 20 pounds occasionally and 10 pounds frequently as well as an ability to sit, stand, and walk for 6 hours each in an 8-hour workday. The claimant is limited to frequent use of the left lower extremity for foot controls, no climbing ladders, ropes, or scaffolds, and occasional climbing of ramps and stairs, stooping, kneeling, crouching and crawling.

    6.    The claimant is capable of performing past relevant work as a hotel/motel housekeeper. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

    7.    The claimant has not been under a disability, as defined in the Social Security Act, from September 30, 2007, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

Tr. at 14-19.

    B.  Legal Framework

        1.    The Commissioner's Determination-of-Disability Process

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are "under a disability," defined as:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]

42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 461 n.2 (1983) (discussing considerations and noting "need for efficiency" in considering disability claims). An examiner must consider the following: (1) whether the claimant is working; (2) whether the claimant has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[2] (4) whether such impairment prevents claimant from performing past relevant work ("PRW"); and (5) whether the impairment prevents the claimant from performing specific jobs that exist in significant numbers in the national economy. *See* 20 C.F.R. § 404.1520, § 416.920. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. § 404.1520(a)(4) and § 416.920(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if she can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. *See* 20

---

[2] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 404.1525. If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, she will be found disabled without further assessment. 20 C.F.R. § 404.1520(a)(4)(iii); § 416.920(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that his impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. § 404.1526; § 416.926; *Sullivan v. Zebley*, 493 U.S. 521, 530-31 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

C.F.R. § 404.1520(a), (b); § 416.920(a), (b); Social Security Ruling ("SSR") 82–62 (1982). The claimant bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that she is unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264–65 (4th Cir. 1981); *see generally Bowen*, 482 U.S. at 146. n.5 (regarding burdens of proof).

2.    The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner of Social Security made after a hearing to which he was a party. . . ." 42 U.S.C. § 405(g). The scope of that federal court review is narrowly-tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See id.*, *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls v. Barnhart*, 296 F.3d at 290 (citing *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try [these cases] de novo, or resolve mere conflicts in the evidence." *Vitek v. Finch*, 438 F.2d 1157, 1157–58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)).

Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings, and that his conclusion is rational. *See Vitek*, 438 F.2d at 1157-58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

C.     Analysis

Plaintiff asserts the ALJ (1) failed to perform a proper analysis of her ability to perform her PRW, and (2) failed to properly evaluate her credibility. Pl.'s Br. 9, ECF No. 25.

1.     Plaintiff's Ability to Return to PRW

Plaintiff first argues that the ALJ's step-four finding that she could perform her PRW was improper because "the ALJ should have questioned [Plaintiff] and specified her stated reasons for being unable to perform [her PRW], and then gone on to explain why the evidence did not support these stated reasons." Pl.'s Br. 11. Plaintiff asserts the ALJ failed to include Plaintiff's description of her PRW as a housekeeper and failed to appraise Plaintiff's statements regarding her PRW and "how her impairments limit her ability to meet the physical and mental requirements of the work." Pl.'s Br. 12. The Commissioner contends the "ALJ properly considered" whether Plaintiff could do her PRW and the ALJ had adequate information when making her decision. Def.'s Br. 6-7, ECF No. 27.

A claimant will be found "not disabled" when it is determined that the claimant retains the RFC perform his or her PRW either as he or she performed it in the past or as it is generally required by employers in the national economy. SSR 82–61, 1982 WL 31387 at *2. The claimant bears the burden of establishing that he or she is incapable of performing his or her PRW. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995); *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992). If a claimant can perform PRW either as she performed it or as it is generally performed in the economy, the claimant is not disabled within the meaning of the Act. SSR 82–61. Plaintiff argues the ALJ's analysis of her ability to perform her PRW failed to comply with SSR 82-62. Social Security Ruling 82-62 provides:

> In finding that an individual has the capacity to perform a past relevant job, the determination or decision must contain among the findings the following specific findings of fact:
>
> 1. A finding of fact as to the individual's RFC.
>
> 2. A finding of fact as to the physical and mental demands of the past job/occupation.
>
> 3. A finding of fact that the individual's RFC would permit a return to his or her past job or occupation.

SSR 82-62, 1982 WL 31386, at *4. Here the ALJ found that Plaintiff was able to perform her PRW as a hotel/motel housekeeper "as actually and generally performed." Tr. 19. The ALJ fulfilled the first requirement of SSR 82-62 by finding Plaintiff had the RFC "to perform less than the full range of light work" with additional postural limitations. Tr. 15. In support of her RFC finding the ALJ cited to the consultative orthopedic examination performed by Dr. Harriett Steinert and to the opinion of a state agency medical consultant, Dr. Joseph Gonzalez.[3] Tr. 17-18.

---

[3] Plaintiff also asserts that the ALJ failed to include in her RFC all of the restrictions indicated in Dr. Gonzalez's September 2010 opinion. Dr. Gonzalez noted that Plaintiff's "[s]ymptoms of can walk 30 minutes before pain begins is credible." Tr. 320. Plaintiff asserts that this notation comports with the VE's testimony that an individual who "could only be on their feet 30-45

9

As to the second requirement, Plaintiff described the demands of her job as a housekeeper in a report of contact, Tr. 168, and in her hearing testimony, Tr. 33. The Commissioner asserts that the ALJ may rely on the general categories of job information in the DOT to presumptively show how Plaintiff's PRW was customarily performed. Def.'s Br. 7 (citing to *Deloatche v. Heckler*, 715, F.2d 148, 151 (4th Cir. 1983); *Thomas v. Astrue*, No. 0:08-2847-PJG, 2010 WL 844756, at *7 (D.S.C. Mar. 3, 2010)). The ALJ noted Plaintiff had PRW "as a hotel/motel housekeeper (DOT number 323.687-014), which is defined by the Dictionary of Occupational Titles as SVP 2, unskilled in nature and required light exertion." Tr. 19. The ALJ determined that in "comparing the claimant's residual functional capacity with the physical and mental demands of this work . . . claimant was able to perform it as actually and generally performed." *Id.* Although she did not question Plaintiff directly regarding her job demands, by relying on the DOT, the ALJ was able to make an appropriate finding. The ALJ also met the third requirement because as she noted in her decision, the VE "specifically testified that the above mentioned residual functional capacity accommodates the requirements of [Plaintiff's] past relevant work." *Id.*

Plaintiff also "asserts that a proper consideration of her past relevant work would require a finding that she is not able to perform her past work and that she is disabled upon Medical Vocational Rules." Pl.'s Br. 14. Plaintiff argues that under the Medical-Vocational Guidelines ("Grids"), based on her age she would be considered disabled if unable to perform her PRW. *Id.* The Grids are applicable when "the individual's impairment(s) prevents the performance of his or her vocationally relevant past work." 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200. Here, the

---

minutes before needing to rest for 20-30 minutes would not be able to perform [Plaintiff's] past work." Pl.'s Br. 14. The Commissioner contends that Dr. Gonzalez's opinion was consistent with the ALJ's finding that Plaintiff had knee pain that limited Plaintiff's functioning and although she may have had pain after 30 minutes, that was not per se disabling. Def.'s Br. 8. The undersigned agrees with the Commissioner and notes that Dr. Gonzalez also opined that Plaintiff appeared "capable of sustaining light work." Tr. 320.

ALJ was not required to find Plaintiff disabled under the Grids because the ALJ determined at Step Four that Plaintiff could return to her PRW.

### 2. Plaintiff's Credibility

Plaintiff's second allegation of error is that the ALJ improperly evaluated her credibility by failing to acknowledge Plaintiff's inability to afford medical treatment, by misconstruing her abilities based on her daily activities, and by failing to contemplate Plaintiff's work history and efforts to return to work when considering her receipt of unemployment benefits. Pl.'s Br. 15-20. The Commissioner contends that substantial evidence supports the ALJ's credibility analysis. Def.'s Br. 9-11.

SSR 96-7p requires that prior to considering Plaintiff's subjective complaints the ALJ must find there is an underlying impairment that has been established by objective medical evidence that would reasonably be expected to cause the subjective complaints of the severity and persistence alleged. Only then is the ALJ to move to the second step: consideration of the record as a whole, including both objective and subjective evidence, to assess the claimant's credibility regarding the severity of her subjective complaints, including pain. *See* SSR 96-7p, 1996 WL 374186; *see also* 20 C.F.R. § 404.1529 and § 416.929; *Craig v. Chater*, 76 F.3d 585, 591-96 (4th Cir. 1996). The requirement of considering a claimant's subjective complaints does not mean the Commissioner must accept those complaints on their face. The ALJ may consider the claimant's credibility in light of her testimony and the record as a whole. If he rejects a claimant's testimony about a claimant's pain or physical condition, the ALJ must explain the basis for such rejection to ensure that the decision is sufficiently supported by substantial evidence. *Hatcher v. Sec'y, Dep't of Health & Human Servs.*, 898 F.2d 21, 23 (4th Cir. 1989) (quoting *Smith v. Schweiker*, 719 F.2d 723, 725 n.2 (4th Cir. 1984)). "The determination or

11

decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p; *see Mickles v. Shalala*, 29 F.3d 918, 927 (4th Cir. 1994) ("Although a claimant's allegations about her pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers . . . .").

Here, the ALJ "considered the applicable evidence of record when assessing the credibility of [Plaintiff's] statements." Tr. 16. With regard to the objective medical evidence, the ALJ noted:

> The medical evidence of record shows that the claimant was initially seen at St. James Santee Family Health Center in May 2008, for right elbow pain and swelling from a fall at work two months earlier. She reported that her elbow symptoms had improved. While the claimant also reported a history of left leg swelling, she was having no problems with the leg at that visit. The claimant had full range of motion and no neurological deficits. In June 2008, the claimant complained of left knee pain; however, examination showed no musculoskeletal or neurological deficits. The claimant was assessed with osteoarthritis and follow-up notes in August 2008, October 2008, and November 2008 show she was treated conservatively with medication (Ibuprofen). When seen on January 8, 2009, the claimant reported only intermittent left knee pain. She was described as not in any acute distress upon examination. No musculoskeletal or neurological deficits were noted. The claimant reported she was "feeling good" on January 29, 2009 and there is no evidence of any treatment for her knee condition beyond this visit.

Tr. 17 (citing to exs. 1F, 2F, and 3F). The ALJ determined the medical evidence did not substantiate Plaintiff's claims regarding the severity of her impairments and the functional limitations imposed by her impairments. Tr. 17. The ALJ noted that Plaintiff alleged to be in

constant pain, but the medical evidence failed to reveal that she was "ever in any acute distress and examinations were essentially benign." *Id.* Although Plaintiff alleges a disability onset date of September 2007, the ALJ noted that "the record revealed no treatment for her alleged musculoskeletal impairment prior to May 2008" and there was "no evidence of treatment for her knee condition beyond January 2009." Tr. 18. The ALJ considered Plaintiff's claim that she was not being treated because she had no income or health insurance, but noted "there are agencies, such as the county health departments," that could provide medical services. *Id.* The ALJ found no indication that Plaintiff "sought out any services that may have provided treatment and medications on a low cost or no cost basis."[4] *Id.*

The ALJ also noted that the documentary evidence of record (March 25, 2010 Report of Contact, ex. 3E) along with Plaintiff's testimony indicated "she was able to care for her personal hygiene and needs independently, do household chores, and walk about thirty minutes to the grocery store." Tr. 18. The ALJ found these activities "inconsistent with complaints of disabling limitations." *Id.* Furthermore, the ALJ found the fact that Plaintiff's acceptance of unemployment benefits "entail[ed] an assertion of the ability to work" which was "facially inconsistent with the claim of disability." *Id.* Although not a bar to a favorable ruling, the ALJ determined it detracted from Plaintiff's credibility. *Id.*

The undersigned finds the ALJ's credibility analysis is supported by substantial evidence and was sufficiently specific. The ALJ discussed the two-part test for evaluating pain and analyzed the entire case record. Tr. 16-19. Substantial evidence supports the ALJ's credibility

---

[4] Plaintiff argues that the ALJ's determination that she did not seek out low-cost treatment is not supported by the record because she received her primary care from St. James Santee Family Health Center which was "a Federally Qualified Health Center, that treats the underserved and underinsured." Pl.'s Br. 17-18. The ALJ acknowledged Plaintiff's treatment at that facility as part of her credibility determination, but also noted that there was no evidence Plaintiff sought treatment beyond January 2009.

determination that despite Plaintiff's claims of ongoing disability symptoms, her treating physicians did not recommend any restrictions and their treatments were conservative. Tr. 17. The ALJ stated that in the RFC assessment she considered Plaintiff's "degenerative joint disease of the left knee, the orthopedic examination findings of the consultative examiner, and the assessment of the State Agency medical consultant." Tr. 19 (citations to exhibits omitted). The ALJ credited some of Plaintiff's complaints regarding her treatment and limitations giving her the "benefit of the doubt" and further limiting her RFC. *Id.* However, due to "inconsistencies in the record as a whole" the ALJ could not find Plaintiff's "allegation that she is incapable of all work activity to be fully credible." *Id.*

Even if the court were to agree with Plaintiff on some of her challenges to the ALJ's analysis, such as the ALJ's failure to mention Plaintiff's failed attempt to return to work in 2008, the undersigned finds that Plaintiff has failed to demonstrate that the ALJ's credibility analysis as a whole is unsupported by substantial evidence or controlled by an error of law. *See Hines v. Barnhart*, 453 F.3d 559, 565 n.3 (4th Cir. 2006) (noting that a claimant's allegations "need not be accepted to the extent that they are inconsistent with available evidence"); *Mickles v. Shalala*, 29 F.3d at 921 (noting that the absence of ongoing medical treatment can discredit a claimant's allegations); *Johnson v. Barnhart*, 434 F.3d at 658 (noting that a claimant's routine activities including reading, cooking, exercising, attending church, cleaning house, washing dishes, doing laundry, and visiting were inconsistent with her complaints); *Hunter v. Sullivan*, 993 F.2d at 35 (finding that the ALJ may properly consider inconsistencies between a plaintiff's testimony and the other evidence of record in evaluating the credibility of the plaintiff's subjective complaints); *Blalock v. Richardson*, 483 F.2d at 775 (indicating that even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence).

The undersigned finds the ALJ's thorough review of the record as a whole, including her articulated reasons for discounting Plaintiff's claims, supports a finding that the Commissioner's decision to deny benefits should be affirmed. *See Wheeler v. Apfel*, 224 F.3d 891, 895 (8th Cir. 2000) (noting ALJ may discount a claimant's complaints if inconsistencies are apparent in the evidence as a whole).

III.    Conclusion and Recommendation

The court's function is not to substitute its own judgment for that of the ALJ, but to determine whether the ALJ's decision is supported as a matter of fact and law. Based on the foregoing, the undersigned finds that the Commissioner performed an adequate review of the whole record and that the decision is supported by substantial evidence.

Accordingly, pursuant to the power of the court to enter a judgment affirming, modifying, or reversing the Commissioner's decision with remand in Social Security actions under Section 1631(c)(3) of the Act, 42 U.S.C. Sections 405(g) and 1383(c)(3), it is recommended that the Commissioner's decision be affirmed.

IT IS SO RECOMMENDED.

August 18, 2014                                         Kaymani D. West
Florence, South Carolina                          United States Magistrate Judge


**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**